IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTOPHER VANESKO | : | CIVIL ACTION |
| | : | NO. 13-01181 |
| v. | : | |
| | : | |
| MARINA DISTRICT DEVELOPMENT | : | |
| COMPANY, LLC et al. | : | |

O'NEILL, J.                                                                                         August 5, 2014

## MEMORANDUM

Plaintiff Kristopher Vanesko sued defendant Marina District Development Company, LLC ("MDDC"), d/b/a the Borgata and defendant Strike Force Protective Services, Inc. after he was injured during a Stone Temple Pilots ("STP") concert at the Borgata on August 6, 2011. Plaintiff claims that defendants negligently breached their duties of care to protect him from foreseeable injury.  Presently before me are defendant MDDC's motion for summary judgment (Dkt. No 23), defendant Strike Force's motion for summary judgment (Dkt. No. 22) and plaintiff's answer thereto (Dkt. No. 25).  For the following reasons I will deny Strike Force's motion and grant MDDC's motion.

## BACKGROUND

While attending a STP concert at the Borgata in Atlantic City, New Jersey on August 6, 2011, plaintiff allegedly suffered "serious and permanent injuries including but not limited to [injuries to] his left knee . . . ." which "require[ed] two (2) surgeries."  Dkt. No. 25 at ECF p. 1, 2, 5-6.  He brings this negligence suit against protective services company Strike Force and venue company MDDC, claiming that defendants breached their duties of care proximately causing his foreseeable injuries.  Plaintiff claims that Strike Force provided guards for the event, but inadequately trained its employees. Dkt. No. 25 at ECF p. 16.  Plaintiff also claims that

MDDC negligently omitted to confirm that Strike Force provided the appropriate number of licensed guards. Id. at 17.

I. **Plaintiff's Injuries**

Plaintiff's claimed injuries occurred when he was, in his words, "knocked over" while standing near the front of the venue trying to take a photograph of the band. See Dkt. No. 25-7 at ECF p. 18-21. Plaintiff described the incident in his deposition:

> Q. Well, you're just standing there?
> A. Enjoying myself.
> Q. Enjoying yourself. Then what happens?
> A. Then at some point I was face down on the ground. Something or someone struck me from behind, or ran into me in some fashion and caused me to get knocked over. Then I remember I turned over, I'm sitting there. At some point I'm looking at the stage, at the other point I'm looking up at the ceiling from the floor. The people were nice enough to help me up. I turned around to see if there was something going on behind me.
> Q: What did you see?
> A: Just more people. I thought maybe there was a fight or something happening behind me.
> Q: But there wasn't?
> A: No there was not . . .
> Q: And you didn't see it coming?
> A: I had no idea.

Id. at 3, 21. Plaintiff also stated in his deposition that prior to his fall he felt safe approaching the front of the venue and that the floor area of the event was crowded but typical for a concert. See id. at 19.

II. **Defendants' Security Measures**

Since March 2009, MDDC has contracted with independent security company Strike Force to provide protective services for events held at the Borgata on an event by event basis.[1] See Dkt. No. 25-3 at ECF p. 12-15. The contract between them stipulates that Strike Force

---

[1] The contract was renewed in February 2011. See Dkt. No. 25-3 at ECF p. 16.

"recognizes that it is engaged by MDDC as an independent contractor and acknowledges that all persons performing Services hereunder shall be employees or agents of [Strike Force] . . . ." Id. at 5.  In addition to requiring that Strike Force provide security during the show, the contract also required that prior to each event "Strike Force [ ] make recommendations to MDDC as to the appropriate security staffing levels . . ." and that after each event, Strike Force provide post-event documentation including sign in/sign out sheets for all security personnel and incident reports. Id. at 14.  At the STP concert, MDDC also supplied Strike Force with a 2-way radio "in order [for Strike Force] to communicate with MDDC Command Post . . . ." Dkt. No. 25-2 at ECF p. 11; see also Dkt. No. 25-3 at ECF p. 14.

According to the deposition of Strike Force supervisor William Anderson, prior to the STP concert the Borgata provided Strike Force with an Entertainment Schedule that called for Strike Force to employ twenty-eight guards and two supervisors at the show.[2]  See Dkt. No. 25-2 at ECF p. 19; Dkt. No. 25-3 at ECF p. 21.  It is undisputed, however, that the STP concert was staffed with only twenty-seven guards and two supervisors.  See Dkt. No. 25-3 at ECF p. 21. Plaintiff and his expert claim that the absent additional guard could have been assigned to roam the concert floor area and if the guard had been on the floor he or she would have been in an opportune position to prevent plaintiff's injuries.[3]  See Dkt. No. 25-9 at ECF p. 12.  Anderson

---

[2] It is clear from the record that the Entertainment Schedule calls for Strike Force to employ 28 guards and 2 supervisors at the STP concert.  See Dkt. No. 25-2 at ECF p. 19.  There is no evidence in the record that Strike Force made any "recommendation to MDDC as to the appropriate security staffing level" as per the Security Services Proposal. Dkt. No. 25-3 at ECF p. 14.  At his deposition, Strike Force supervisor Anderson testified that MDDC provided the Entertainment Schedule to Strike Force and that its requirements were "[b]ased upon . . . [the Borgata's] experience of how many [guards] might be needed for th[e] type of venue." Dkt. No. 25-2 at ECF p. 19.

[3] Strike Force's Event Manager Report filed after the concert in compliance with its contract with MDDC described events at the concert including plaintiff's injury.  See Dkt. No. 25-3 at ECF p. 6.  The report shows that there were three other incidents at the STP concert –

testified that, before the concert, he did not instruct the guards assigned to the concert to monitor the floor area to ensure it did not get too crowded. Dkt. No. 25-2 at ECF p. 52:23-53:5.

Plaintiff's expert also submits that the Strike Force guards who worked the STP event were inadequately trained and in some cases unlicensed. See Dkt. No. 25-9 at ECF p. 24, 28. As of 2008, minimum licensing is required by the New Jersey Security Officer/Industry Registration Act ("SORA") and a mandatory standardized 24-hour training is required for all security practitioners.[4] See Dkt. No. 25 at ECF p. 9. Of the twenty-nine employees that Strike Force staffed the STP concert with, the record provides evidence demonstrating that up to seven guards were not licensed at the time of the STP concert and that one guard was working his first job and had been issued a temporary license immediately prior to the show. See Dkt. No. 25-9 at ECF p. 16; Dkt. No. 26 at ECF p. 1. Anderson's deposition further revealed that Strike Force does not provide its guards with any training beyond that required by SORA and that it is Strike Force policy that so long as a guard is SORA certified he or she can work. See Dkt. No. 25-2 at ECF p. 6. Plaintiff's expert, however, found the SORA training "simply inadequate to train a security officer for Event Security." Dkt. No. 25-9 at ECF p. 19. Plaintiff's expert concluded that plaintiff's injuries "should have been [ ] avoidable [ ] had Strike Force Protective Services properly planned, managed and supervised the event." Id. at 22.

Defendants counter that plaintiff's injuries were unforeseeable and could not have been prevented. See Dkt. No. 22 at ECF p. 6-10; Dkt. No. 23 at ECF p. 6-13. They contend that

---

two women passed out and a third woman was urinated on by a man trying to relieve himself in a cup in front of her. See id. at 21; Dkt. No. 25 at ECF p. 7.

[4] The NJ SORA website states that the "[t]he training allows security practitioners the ability to better understand and perform their duties . . . [t]he objectives of the training are to provide training in a variety of subjects directly related to the security and safety of our clients . . . [and that] [t]he knowledge gained through this program offers exposure to fundamental concepts and principles of the security industry." Dkt. No. 25-9 at ECF p. 17.

summary judgment should be granted in their favor because they did not breach their duties of care and even if so, their alleged breaches could not have thwarted plaintiff's unforeseeable injuries.  See id.

## LEGAL STANDARD

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on

unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

In order to prevail on a negligence cause of action in both Pennsylvania and New Jersey, plaintiff must prove: (1) that defendants owed him a duty of care; (2) that defendants breached their duties; and (3) that defendants' breaches proximately caused his injuries.[5]  See Robinson v. Vivirito, 86 A.3d 119, 124 (N.J. 2014) (stating the elements of a cause of action for negligence); Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009) (same).  A plaintiff must demonstrate the existence of all three elements to prevail on his claim.  See id.

**I.    Strike Force**

**A.    Duty**

Strike Force does not dispute that it had a duty to protect plaintiff from foreseeable

---

[5]    Both the courts of Pennsylvania and New Jersey would analyze plaintiff's negligence claim under § 344 of the Restatement (Second) of Torts.  Compare Clohesy ex rel. Dalton v. Food Circus Supermkts., Inc., 694 A.2d 1017, 1023 (N.J. 1997) (applying § 344 of the Restatement (Second) of Torts to analyze liability of business owner), with Moran v. Valley Forge Drive-In Theater, Inc., 246 A.2d 875, 879 (Pa. 1968) (same).  When the laws of two states are substantively identical, a choice of law analysis is unnecessary.  See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007) (stating "[w]e think it is incorrect to use the term 'false conflict' to describe the situation where the laws of two states do not differ.  If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary.").  Accordingly, I will "refer interchangeably to the laws of the states whose laws potentially apply."  Estate of O'Loughlin ex rel. O'Loughlin v. Hunger, No. 07-1860, 2009 WL 1084198, at *3 (E.D. Pa. Apr. 21, 2009), quoting Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006); see also Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994) (avoiding the choice of law question "when not put in issue" and referring interchangeably between two states' laws).

injury. Dkt. No. 22 at ECF p. 7. Strike Force's duty is grounded in traditional negligence principles, which determination is ultimately grounded in "'a question of fairness and public policy' that implicates many factors." Carvalho v. Toll Bros. & Developers, 714 A.2d 924, 928 (N.J. 1996), quoting Clohesy ex rel. Dalton v. Food Circus Supermkts., Inc., 694 A.2d 1017, 1020 (N.J. 1997). In deciding what is within the legal scope of duty, the court is required to "draw on 'notions of fairness, common sense, and morality.'" J.S. v. R.T.H., 714 A.2d 924, 928 (N.J. 1998), quoting Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1116 (N.J. 1993). "The duty element requires [the court] to make a policy judgment whether it is in the public interest to impose damages on those who have failed to conform their behavior to a particular standard." Pyeritz v. Com, 32 A.3d 687, 692 (Pa. 2011).

As Strike Force is a security company hired to protect concert-goers and maintain the safety of the venue, it is reasonable, fair and in the interest of public policy to impose a duty on it to protect plaintiff from foreseeable injury.[6] See Thompson v. Garden St. Arts Ctr., Partners, 2007 WL 1598616, at *3 (N.J. Super. Ct. App. Div. June 5, 2007) ("As to the security firm, though no New Jersey case discusses the duty of a security services provider, we see no reason not to apply traditional negligence principles in such a context . . . [t]here is no question that [the security firm] like the [venue owner] defendants owed a duty to concert invitees, such as plaintiff."); see also Ferguson v. Electric Factory Concerts, Inc., 7 Pa. D. & C. 5th 476, 483 (Pa. Ct. Comm. Pleas 2009) (imposing duty on defendant security company to protect concert-goers).

---

[6] Strike Force's duty could also be grounded in § 383 of the Restatement (Second) of Torts which imposes the same liability on independent contractors performing a service upon land on behalf of the land's possessor as it does on the possessor. See Restatement (Second) of Torts § 383 (1965); see also La Russa v. Four Points at Sheraton Hotel, 821 A.2d 1169, 1173 (N.J. Super. Ct. App. Div. May 14, 2003) (applying Restatement § 383 to find that a person acting on behalf of possessor of land is subject to the same liability as the possessor of land).

### B.     Breach of Duty

Although Strike Force concedes that it owed plaintiff a duty of care, it contends that it did not breach its duty. See Dkt. No. 22 at ECF p. 7. The Supreme Courts of Pennsylvania and New Jersey have held that the question of whether there is a breach of duty is a question of fact typically reserved for the jury. See Emerich v. Phila. Ctr. for Human Dev., Inc., 720 A.2d 1032, 1044 (Pa. 1998) ("While the existence of a duty is a question of law, whether there has been a neglect of such duty is generally for the jury."); Morris v. Krauszer's Food Stores, Inc., 300 A.2d 529, 534 (N.J. Super. Ct. App. Div. 1997), citing Butler v. Acme Mkts., Inc., 445 A.2d 1141, 1145 (N.J. 1982) ("The Supreme Court [of New Jersey] has held that the determination of whether the business owner has breached that duty is a jury question."). Summary judgment is appropriate, however when "a rational fact finder could not conclude defendant breached [its] duty of care . . . ." Endre v. Arnold, 692 A.2d. 97, 100 (N.J. Super. Ct. App. Div. 1997); see also Emerich, 720 A.2d at 1044 (finding that summary judgment is warranted "when the case is free from doubt and there is no possibility that a reasonable jury could find negligence").

Under the terms of the Entertainment Schedule, Strike Force was obligated to employ twenty-eight guards and two supervisors at the show.[7] See Dkt. No. 25-2 at ECF p. 19; Dkt. No. 25-3 at ECF p. 21. It is undisputed, however, that the STP concert was staffed with only twenty-seven guards and two supervisors. See Dkt. No. 25-3 at ECF p. 21. Further, up to seven of the employees Strike Force provided to cover the concert were unlicensed and had no training

---

[7]    It is clear from the record that the Entertainment Schedule calls for Strike Force to employ 28 guards and 2 supervisors at the STP concert. See Dkt. No. 25-2 at ECF p. 19. There is no evidence in the record that Strike Force made any "recommendation to MDDC as to the appropriate security staffing level" as per the Security Services Proposal. Dkt. No. 25-3 at ECF p. 14. At his deposition, Strike Force supervisor Anderson testified that MDDC provided the Entertainment Schedule to Strike Force and that its requirements were "[b]ased upon . . . [the Borgata's] experience of how many [guards] might be needed for th[e] type of venue." Dkt. No. 25-2 at ECF p. 19.

whatsoever.  See Dkt. No. 25-9 at ECF p. 22, 30.  I agree with plaintiff that summary judgment cannot be granted in Strike Force's favor because there are material disputes of fact as to whether Strike Force "adequately trained its security guards, whether these guards were all properly credentialed by the State of New Jersey and permitted to act as security guards pursuant to the applicable statute, whether Strike Force provided adequate security to prevent the incident involving plaintiff" and whether an adequate number of trained guards could have prevented plaintiff's injuries.  Dkt. No. 25 at ECF p. 11-2; see also Baker v. Solo Nightclub, LLC, No. 11-2380, 2013 WL 1927052, at *9 (E.D. Pa. May 9, 2013) (finding that a genuine issue of material fact existed as to whether a search by metal detector wand and pat down, ID check, and the presence of seven security guards inside a nightclub were sufficient to prevent a reasonable foreseeable crime); Moran v. Valley Forge Drive-In Theater, Inc., 246 A.2d 875, 878-80 (Pa. 1968) (finding it a jury question whether adequate security measures were taken to prevent children from injury by third parties setting off firecrackers in restroom); cf. D'Alessio v. Starland Ballroom, No. L-715-10, 2013 WL 5179261, at *5 (N.J. Super. Ct. App. Div. May 13, 2013) (granting summary judgment for defendant on the basis that "there is nothing in the record to support plaintiff's claim that . . . defendants failed to properly protect plaintiff against [a dangerous] condition"); Thompson, 2007 WL 1598616, at *4 (granting summary judgment but finding that the plaintiff's expert "did not criticize the number of security personnel present" nor did he criticize the adequacy of the guards' training or licensing).  Drawing all inferences in favor of plaintiff, a reasonable jury could conclude that Strike Force breached its duty of care to provide adequate security at the STP concert and I will not grant summary judgment for Strike Force based on its contention that it satisfied its duty of care.

### C.     Proximate Cause

I will also deny Strike Force's motion for summary judgment to the extent that it rests on Strike Force's assertion that its actions were not the proximate cause of plaintiff's injuries. For there to be a finding of proximate cause, there must be a "causal connection between defendant's breach and [plaintiff's] resulting injur[ies]." Orner v. Mallick, 527 A.2d 521, 523 (Pa. 1987). Foreseeability is a critical element to consider when determining whether there is proximate cause. See Yun v. Ford Motor Co., 669 A.2d 1378, 1378 (N.J. 1996) ("An essential element of proximate cause is foreseeability. When injuries resulting from negligence are not foreseeable, there can be no finding of proximate cause.").[8]

To establish proximate cause, plaintiff must set forth facts that support a reasonable inference that "the harm would not have occurred absent the conduct" and that the alleged breach was "an actual, real factor in causing the harm, even if the result is unusual or unexpected." Vaskas v. Kenworth Truck Co., No. 10-1024, 2013 WL 101612, at *12 (M.D. Pa. Jan. 8, 2013), citing Summers v. Kenworth Truck Co., 997 A.2d 1163-64 (Pa. 2010); Powell v. Drumheller, 653 A.2d 619, 622 (Pa. 1995), quoting Jones v. Montefiore Hosp., 431 A.2d 920, 924 (Pa. 1981); ("Proximate cause is a term of art, and may be established by evidence that a defendant's negligent act or failure to act was a substantial factor in bringing about the harm inflicted upon a plaintiff.").

---

[8]     Foreseeability as it applies to the proximate cause analysis is not to be confused with foreseeability as it applies to determining whether the imposition of duty is appropriate. See Clohesy, 694 A.2d at 1021. "Foreseeability that affects proximate cause . . . relates to 'the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff' reasonably flowed from defendant's breach of duty. Foreseeability in the proximate cause context relates to remoteness rather than the existence of a duty." Id., quoting Hill v. Yaskin, 380 A.2d 1107, 1109 (N.J. 1977). Here the issue to be decided is not whether Strike Force owed plaintiff a duty of care, but whether plaintiff's injuries were foreseeable and could have been prevented had Strike Force exercised reasonable care.

Like a determination on breach of duty, questions of proximate cause are typically reserved for the jury. See Miller v. Estate of Sterling, 766 A.2d 738, 747 (N.J. 2001), citing Perez v. Wyeth Labs., Inc., 734 A.2d 1245, 1261 (N.J. 1999) ("Ordinarily, issues of proximate cause are considered jury questions."); Anderson v. Bushong Pontiac Co., 171 A.2d 771, 775 (Pa. 1961) (stating "the question of proximate cause of an accident is almost always one of fact for the jury"); Summers v. Certainteed Corp., 997 A.2d at 1163-64 (Pa. 2010), quoting Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978) ("[w]hether in a particular case [plaintiff's burden of preponderance of the evidence] has been met with respect to the element of causation is normally a question of fact for the jury"); Topelski v. Universal S. Side Autos, Inc., 180 A.2d 414, 419 (Pa. 1962) ("where facts are disputed, or where from the undisputed facts there is room for reasonable difference of opinion as to whether the defendant's act was the, or a proximate cause of the injury, the matter is for the jury to decide"). But see Reilly v. Tiergarten Inc., 633 A.2d 208, 210 (Pa. Super. Ct. 1993), citing Novak v. Jeannette Dist. Mem. Hosp., 600 A.2d 616, 618 (Pa. 1991) ("Proximate cause, is a question of law, to be determined by the judge, and it must be established before the question of actual cause may be put to the jury."). In unique circumstances, however, the issue of proximate cause may be removed from the jury if the resultant harm is of "highly extraordinary consequence." Garrison v. Twp. of Middletown, 712 A.2d 1101, 1114 (N.J. 1998); see also Hamil v. Bashline, 392 A.2d at 1285 (stating "the question [of proximate cause] is to be removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue").

Strike Force argues that it could not have prevented plaintiff's injuries even if it had exercised reasonable care to protect plaintiff because the "incident occurred so suddenly [that] no number of security staff could have prevented the accident." See Dkt. No. 22 at ECF p. 8. It

contends that it "had no notice of plaintiff's impending injuries." Id. at ECF p. 7. In support of its argument, Strike Force cites to Thompson, 2007 WL 1598616, at *4, where the New Jersey Superior Court found that "the facts simply do not support plaintiff's allegations that the attack could have been prevented by additional security or that the extant security personnel were in a position to prevent the harm."

But in Thompson, 2007 WL 1598616, at *2, the plaintiff's expert "did not criticize defendants for a lack of [adequately trained] security personnel." Here, in contrast, plaintiff's expert has submitted that plaintiff's injury "could and should have been an avoidable incident/injury had Strike Force Protective Services properly planned, managed, and supervised the event." See Dkt. No. 25-9 at ECF p. 22. Unlike in Thompson, plaintiff has offered sufficient evidence, including his expert's report, to raise a material question of fact as to whether Strike Force provided adequate security and, in particular, whether Strike Force employees were untrained and incompetent. See Dkt. No. 25-9 at ECF p. 22-3. Either Strike Force or MDDC thought thirty adequately trained Strike Force employees should be required to secure the event, not twenty-nine employees, some of whom arguably lacked adequate training. Further, plaintiff's expert posits that plaintiff's injuries would have been preventable by adequate security measures. See Dkt. No. 25-9 at ECF p. 29.

From this, I find that a reasonable jury could conclude that Strike Force's conduct is a but-for cause of plaintiff's injuries. The issue here is not only whether the incident occurred so quickly that Strike Force could have acted to prevent plaintiff's injuries, but also whether, "[h]ad a trained security staff been posted to provide effective security and had manning been at authorized strength," plaintiff's injury would have occurred. Dkt. No. 25-9 at ECF p. 28; see Rabutino v. Freedom St. Realty Co., Pa., 809 A.2d 933, 942 (Pa. Super. Ct. 2002) (discussing

superseding cause issue and finding "it would be sufficient for Rabutino to withstand summary judgment by producing evidence that Freedom Realty perpetuated an atmosphere where it was foreseeable that a harmful confrontation . . . could have arisen"), citing Glass v. Freeman, 240 A.2d 825, 830 (Pa. 1968) (finding that injury from superseding cause was foreseeable when it was defendants' negligent actions that enabled the possibility of third party negligent conduct); Bethea v. Bristol Lodge Corp., No. 01-612, 2002 WL 31859434, at *10 (E.D. Pa. Dec. 18, 2002) (finding it is a jury question whether defendant's alleged failure to provide adequate security proximately caused plaintiff's harm); see also Hirst v. Inverness Hotel Corp., 544 F.3d 221, 223-29 (3d Cir. 2008) (remanding case for a jury determination of whether hotel security company's negligence proximately caused rape of plaintiff). Whether any breach by Strike of its duty to plaintiff proximately caused plaintiff's injury is a question appropriate for the jury. Accordingly, I will deny Strike Force's motion for summary judgment.

**II.   Marina District Development Company**

    **A.   Duty**

MDCC does not dispute that, as the owner of the concert premises, it owed a duty to plaintiff to protect him from foreseeable harm. See Dkt. No. 23 at ECF p. 7-9 ("a landowner is subject to liability for the physical condition of the premises where it had actual or constructive notice of the circumstance giving rise to a plaintiff's injuries, and for the acts of third parties if it knew or should have known that the acts of a third party were about to transpire and failed to adequately protect the members of the public . . ."). MDDC's duty is grounded in § 344 of the Restatement (Second) of Torts, adopted by both Pennsylvania and New Jersey. Compare Butler, 445 A.2d at 1147 (applying Restatement (Second) of Torts § 344 cmt. f (1965) to analyze

whether business owner breached its duty of care to protect business invitees), with Moran, 246 A.2d at 878 (same). Restatement § 344 states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344 (1965).

Comment (f) to Restatement § 344 specifically addresses plaintiff's situation. Per comment (f), "[i]f the place or character of [MDDC's] business, or [MDDC's] past experience, is such that [MDDC] should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, [MDDC] may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." Restatement (Second) of Torts § 344 cmt. f (1965); see Butler, 445 A.2d at 1147 (applying comment (f) to analyze whether business owner breached its duty of care to protect business invitees), with Moran, 246 A.2d at 436 (same); see also Baker, 2013 WL 1927052, at *7 (grounding night club venue owner's duty of care in Restatement § 344 comment (f)); Thompson, 2007 WL 1598616, at *3 (grounding concert venue owner's duty of care in Restatement § 344 comment (f)). Per comment (f), to impose a duty it is not necessary that MDDC be aware of a specific impending act; rather, to impose a duty MDDC must have only actual or constructive knowledge that any concert-goer may be injured by some third-party. See Moran, 246 A.2d at 437 ("Under Section 344 of the Restatement of Torts, it is not necessary for

-14-

defendants to be specifically aware of the exact location on their premises where patrons might be injured by the tortious acts of third persons.").[9] Thus, MDDC owed plaintiff a duty of care to protect him from reasonably foreseeable acts of third parties and to provide a sufficient number of adequately trained security guards.

### B. Breach of Duty

Like Strike Force, MDDC contends that it did not breach its duty of care. Dkt. No. 23 at ECF p. 12;. To survive MDDC's motion for summary judgment, plaintiff must put forth evidence from which a reasonable jury could infer MDDC breached its duty. See Celotex Corp., 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case . . . .") (internal quotation omitted). MDDC asserts that it satisfied its duty by employing independent security company Strike Force, who it reasonably believed would provide "licensed and trained security personnel." Dkt. No. 23 at ECF p. 13. Plaintiff counters that summary judgment should not be granted in MDDC's favor because MDDC acted negligently in "fail[ing] to ensure" that Strike Force "was acting in compliance with the law and the Services Agreement." Dkt. No. 25 at ECF p. 17.

Under Restatement § 344, MDDC had a duty to take reasonable precautions to prevent

---

[9] Based on its experience as a concert venue owner that had employed Strike Force for security services almost two years at the time of the concert, Dkt. No. 23 at ECF p. 13, I find that it is reasonable to infer that MDDC had notice "that there [was] a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor." Restatement (Second) of Torts § 344 cmt. f (1965). Indeed, at the STP concert there were three incidents, defined to include "walk-outs, intoxicated patrons, situations involving medical issues, fights, ejections, and customer service issues," noted in Strike Force's incident report other than the incident involving plaintiff: two women passed out and a third woman complained she was urinated on by a man trying to relieve himself in a cup in front of her. See Dkt. No. 25-3 at ECF p. 14, 18-20.

against foreseeable danger caused by third parties, which required that MDDC use reasonable care to implement adequate event security. See Moran, 246 A.2d at 438 ("It is merely necessary, under the Restatement of Torts, Section 344, that reasonable measures be taken to control the conduct of third persons, or to give adequate warning to enable patrons to avoid possible harm."). MDDC contends that it "hired Strike Force to enforce its policies against unsafe crowd behavior." Dkt. No. 23 at ECF p. 13. The Services Agreement between MDDC and Strike Force required Strike Force to provide "licensed and trained security personnel who shall provide security services for events held at the Borgata." Dkt. No. 25-3 at ECF p.14. Plaintiff has not set forth any evidence that would demonstrate that MDDC had actual or constructive knowledge that Strike Force was not fulfilling its contractual obligations or providing adequate security. In the absence of such evidence, the Services Agreement is unrebutted evidence that MDDC implemented reasonable measures to ensure plaintiff's safety. See D'Alessio, 2013 WL 5179261, at *5 ("AEG took reasonable precautions to enforce its policy against unsafe crowd behavior by employing Strike Force."); but see Ferguson, 2009 WL 2055942, at *483 (finding that other defendants' engagement of an independent security company did not relieve them of their duty of care to provide adequate security). Accordingly I cannot infer that a reasonable juror could hold that MDDC acted in breach of the duty imposed by Section 344.

Further, MDDC cannot be held vicariously liable for any breach by Strike Force. The Courts of Pennsylvania and New Jersey both have adopted the general rule that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." Restatement (Second) of Torts § 409 (1965); see O'Keefe v. Sprout-Bauer Inc., 970 F.2d 1244, 1250 (3d Cir. 1992); Beil v. Telesis Const., Inc., 11 A.3d 456, 464 (Pa. 2011) (same). Exceptions to this general rule apply however when: an (1) "owner or

general contractor hire[d] an 'independent' contractor but retains control over the manner in which the work is performed"; (2) "an owner or general contractor knowingly hir[ed] an incompetent independent contractor" and (3) "where the work performed by a subcontractor constitute[d] a nuisance per se." Id. at 1251-52; Warnick v. Home Depot U.S.A., Inc. 516 F. Supp. 2d 459, 468-70 (E.D. Pa. 2007) (discussing "peculiar risk" exception and "retained control" exception"); Fedor v. Van Note-Harvey Assocs., No. 10-5110, 2011 WL 1085993, at *4 (E.D. Pa. Mar. 18, 2011) (finding that there is an exception for failure to employ a competent contractor that applies to claims by third persons).

      If plaintiff's negligence claim was to fall within any of the three exceptions it would fall within: (1) retained control or (2) negligent hiring. Plaintiff has alleged that MDDC negligently failed to "ensure that the security company which is retained to provide security services was acting in compliance with the law and the Services Agreement." Dkt. No. 25 at ECF p. 17. Providing unarmed security services at a concert is not an inherently dangerous condition that falls within exception (3). See Schreiber v. Camm, 848 F. Supp. 1170, 1177-78 (D.N.J. 1994) (finding that providing armed security services is not an inherently dangerous activity).

      Drawing all inferences in favor of plaintiff, I find that the record shows that MDDC did not retain sufficient control over Strike Force's work such that MDDC should be held liable for Strike Force's alleged negligence. First, the contract between MDDC and Strike Force did not give MDDC "the capacity to control any unsafe condition . . ." such that I must find that MDDC retained control over Strike Force. Lopez v. Honeywell Intern., Inc., No. 10-3518, 2014 WL 3500326, at *14 (D.N.J. July 14, 2014) (finding that the defendant "retained control over the manner and means of the work performed" by its contractor where their contract gave the defendant "the capacity to control any unsafe condition or work environment"); see also

Yazujian v. Jacobs Project Mgmt. Co., No. 12-1450, 2013 WL 5948025, at *7 (E.D. Pa. Nov. 7, 2013) (finding contractual provision "that deals only generally with 'safety issues' cannot show [the defendant's] retention of control" of its contractor).

Second, plaintiff has not set forth sufficient evidence to raise a material question of fact as to whether, regardless of the terms of their agreement, MDDC exercised actual control over Strike Force. Although plaintiff has shown that MDDC recommended that twenty-eight guards and two supervisors should be assigned to work the event, plaintiff has not shown that MDDC attempted to require Strike Force to follow its recommendation. See Poehmel v. Aqua Am. Pa., Inc., No. 10-2372, 2013 WL 27493, at *13 (M.D. Pa. Jan. 2, 2013) (finding that "the Contractor's decisions to ignore many of [the defendant's] safety suggestions demonstrate that [the defendant] did not have control over the project"). Indeed, plaintiff asserts that MDDC "failed to confirm . . . that the number of guards were on-site as set forth in the Entertainment Schedule 2011." Dkt. No. 25 at ECF p. 17. Further, that MDDC was able to communicate with Strike Force by radio during the event and that MDDC could have attended the security meeting with the band's personal security, Dkt. No. 25-2 at ECF p. 7, are not indicative of supervision that is sufficient in degree to require that I impose liability on MDDC based on its retained control. See Beil, 11 A.3d at 466-67, quoting Restatement (Second) of Torts § 414, cmt. c ("It is not enough that [an employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations."); Warnick, 516 F. Supp. at 468 ("A long line of Pennsylvania cases has construed [the retained control] exception narrowly, almost always finding that the hiring party did not exercise sufficient control over the contractor to impose liability on the hiring party for the contractor's employee's injury."); see

-18-

also Vargas v. Beer Garden, Inc., 15 A.D. 3d 277, 278 (N.Y. App. Div. 2005) ("It does not avail plaintiff that the nightclub decided the number of guards needed on a particular night and where on its premises the guards should be posted at any given time, and also required that the guards not carry weapons and never fight back with patrons or people on the street . . . .").

  I find also that plaintiff has not established that MDDC knew or should have known that Strike Force or its employees were not qualified to provide the security required at the STP concert. As MDDC notes in its motion, the fact that MDDC renewed its contract with Strike Force after two years "indicat[es] that Strike Force had more than adequately performed its security functions in the years prior to Plaintiff's injury." Dkt. No. 23 at ECF p. 13; see also Dkt. No. 25-3 at ECF p. 14.

> To establish that a principal hired an incompetent contractor, "a plaintiff must show that the contractor was, in fact, incompetent or unskilled to perform the job for which he/she was hired, that the harm that resulted arose out of that incompetence, and that the principal knew or should have known of the incompetence."

Jarrah v. Trump Hotels & Casino Resorts, Inc., 487 F. Supp. 2d 522, 528 (D.N.J. 2007), quoting Puckrein v. ATI Transport, Inc., 897 A.2d at 1042 (N.J. 2006). Plaintiff has not set forth any evidence that would show that MDDC did not exercise reasonable care when hiring Strike Force or renewing its contract. In its response to MDDC's motion, plaintiff asserts that MDDC

> failed to ensure that the security company which is retained to provide security services was acting in compliance with the law and the Services agreement. In particular, defendant, Borgata, failed to confirm that the guards acting on its premises for the concert were all licensed in accordance with 45:19A-1 (Security Officer Registration Act) . . . .

Dkt. No. 25 at ECF p. 17. Plaintiff, however, cites to no evidence in support of his contention that MDDC failed to adequately investigate the competency of Strike Force or its employees. To withstand MDDC's motion, plaintiff must raise "more than a mere scintilla of evidence in its

favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).

Accordingly, because I find that plaintiff has not alleged sufficient facts from which a reasonable jury could infer that MDDC failed to exercise reasonable care and because plaintiff has not set forth sufficient facts to require that I hold MDDC vicariously liable for Strike Force's alleged breach, I will grant MDDC's motion for summary judgment.

An appropriate Order follows.